FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2017 MAY 30 P 2:52
CLERK'S OFFICE
AT GREENBELT
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

CALVIN LORENZO
HARDY, JR.,

    Plaintiff,

v.      Civil Action No. GJH-16-2868

KALID EL SAYED, *et al.*,

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Calvin Lorenzo Hardy, a patient committed to the Clifton T. Perkins Hospital Center within the Maryland Department of Health and Mental Hygiene, brought the instant action against three doctors ("Defendants") for alleged violations of his constitutional rights. ECF No. 1. Defendants moved to dismiss based upon Plaintiff's failure to comply with the initial partial filing fee and fee payment schedule, ECF No. 7, and later moved to dismiss based upon failure to state a claim, qualified immunity, and the applicable statute of limitations, ECF No. 12. Following the appointment of a guardian ad litem, the Court has reviewed and now accepts the findings of the guardian ad litem deeming Plaintiff competent to represent himself in this matter. For the following reasons, Defendants' Motion to Dismiss, ECF No. 7, is granted.

### I.    BACKGROUND

#### A. Procedural History

On August 12, 2016, Plaintiff filed a self-represented civil rights action against three doctors at Clifton T. Perkins Hospital Center ("CTPHC") seeking money damages and release

from the institution. ECF No. 1 at 3.[1] Specifically, Plaintiff alleges that Defendants violated his constitutional rights by treating him with ineffective medications that have sedated him and caused his condition to worsen, and questions why he is still institutionalized nearly 15 years following his arrest for second-degree assault. *Id.* Plaintiff also filed a Motion for Leave to Proceed in Forma Pauperis on August 12, 2016, stating that he was unable to pay the $350.00 filing fee and costs associated with this action. ECF No. 2.

On September 2, 2016, the Court entered an Order requiring the Finance Officer at CTPHC to file within 21 days an inmate account summary information sheet for the past six months of Plaintiff's incarceration, along with a certificate indicating the average monthly balance in the account for the six month period immediately preceding the filing of the Complaint and the average monthly deposits to the account during that time. ECF No. 3 ¶ 2. On September 23, 2016, the Finance Officer filed an inmate account summary information sheet and a certificate indicating the average monthly balance in the account for the six-month period immediately preceding the filing of Plaintiff's complaint was $51.20 and the average monthly deposits to the account during that time was $20.00. ECF No. 4 ¶ 2.

On September 29, 2016, the Court ordered Plaintiff to pay an initial partial filing fee of $10.24 with monthly payments of twenty percent of each preceding month's income credited in his account toward the $350.00 fee as required by statute. ECF No. 5 ¶ 1–2. The Order warned that Plaintiff's failure to comply with the terms of the Order "will result in dismissal of this case without further notice from the Court." ECF No. 5 ¶ 6. On October 20, 2016, Plaintiff's social worker, Michael Jordan, LCSW-C, attempted to obtain Plaintiff's consent to release the $10.24 for the initial partial filing fee required pursuant to the September 29, 2016 Order. ECF No. 7 ¶

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2. Plaintiff indicated that he was not willing to provide any portion of the filing fee and acknowledged that he was aware that his failure to make payments would result in dismissal of his complaint. ECF No. 7 ¶ 3. These statements were formalized in a letter signed by both Mr. Hardy and Mr. Jordan on October 20, 2016. ECF No. 7-1.

On October 21, 2016, Defendants filed a motion to dismiss based on Plaintiff's refusal to allow the partial filing fee to be taken from his institutional account. ECF No. 7. On November 2, 2016, Plaintiff filed a response to Defendants' Motion to Dismiss, essentially reiterating the claims and requests set forth in the Complaint. ECF No. 9. On November 9, 2016, this Court appointed a Guardian Ad Litem for Plaintiff for the limited purpose of reviewing the pleadings in this case, determining Mr. Hardy's status at CTPHC, and advising the Court of the propriety of Mr. Hardy's continued participation in the litigation. ECF No. 10 at 2. This appointment was made due to the Court's concern that Plaintiff "suffers a mental impairment causing him to act against self-interest by filing a lawsuit that may state constitutionally valid claims, then prohibiting his lawsuit to proceed for a response based on a failure to comply with the partial filing fee." ECF No. 10 at 1. The Guardian has submitted a well-reasoned, detailed report with exhibits, including an evaluation of Plaintiff's clinic status and a recommendation as to the propriety of his continued participation in the litigation. ECF No. 16.

On November 18, 2016, Plaintiff filed a response, objecting to the appointment of the Guardian and expressing an affirmative desire to represent himself or have his parents act as guardians. ECF No. 11-1. Specifically, Plaintiff stated, "I feel disappointed because there [are] some false accusations . . . I still have a Mother and Father. I don't need a Guardian. I'm still fi[li]ing a law suit for keeping me on medication that's making me slow and retard[ed]…I plead N.C.M [sic] because I thought it will only give me five years . . ." *Id.* Significantly, Plaintiff also

stated, "I could not pay the court fee . . . I have only hospital money . . . if I could pay with that I will . . ." *Id.* The Court rejected and returned the response to Plaintiff on November 21, 2016, because it lacked an original signature. *Id.*

On November 28, 2016, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment based on Plaintiff's failure to state a plausible claim for relief, Defendants' qualified immunity, and the applicable statute of limitations. ECF No. 12. The previously-filed motion to dismiss, ECF No. 7, and this motion are now pending. On December 16, 2016, Plaintiff filed a Response in Opposition to the Guardian's Request for Extension to File Written Statement, requesting that the Court deny the extension request. Specifically, Plaintiff contended that he "did not ask for a guardian" or "go to court to be appointed a guardian," and that appointing him a guardian ad litem "is not in my best interest or helping me to get my case in your court or [with] my release." ECF No. 14. The extension was granted on December 21, 2016, extending the deadline to file the Report to March 7, 2017. ECF No. 15.

### B. Investigation by the Guardian Ad Litem

The Court-appointed Guardian requested and obtained Plaintiff's complete patient CTPHC file, consisting of all annual reports, individual treatment plans, forensic reports regarding incompetency or criminal responsibility, physician orders, progress notes, nutrition and somatic records, medical and psychotherapy records and all "legal" documentation. A summary of 27 documents, spanning more than fifteen years are indexed and included in the guardian's report, and summarized below.

#### 1. Placements and Clinical Status

On November 29, 2000, Hardy was found Not Criminally Responsible ("NCR") for second-degree assault for acts occurring on December 15, 1999. ECF No. 16-1 at 2. As a result,

4

he was committed to the Department of Health and Mental Hygiene ("DHMH") for institutional, inpatient care and treatment, pursuant to Md. Code, Health–Gen. § 12-111. *Id.* Hardy was initially treated at Walter P. Carter Center and then transferred to Spring Grove Hospital Center where he remained until January 2002. ECF No. 16-23 at 2. On January 17, 2002, Hardy was transferred to CTPHC after he assaulted a staff member and eloped from confinement at Spring Grove Hospital Center. *Id.*

On or about February 21, 2014, Hardy was charged with second-degree assault and sex offense in the fourth degree for allegedly assaulting a female staff member at CTPHC on or about September 20, 2013. ECF No. 16-11 at 2; *see also* ECF No. 16-23 at 2. On April 11, 2014, Hardy's counsel filed a motion claiming that he was incompetent to stand trial because he was unable to understand the nature or object of the proceedings or to assist in his defense. ECF No. 16-12 at 2. Counsel requested the court issue an order to evaluate Hardy's competency. *Id.* A competency examination was ordered on April 15, 2014, and a Medical Officer from DHMH's Office of Forensic Services conducted the examination and published a report on May 2, 2014. ECF No. 16-13 at 1. The Medical Officer concluded that he did not believe that Hardy understood the nature and object of the proceedings against him and did not think that he would be able to assist in his own defense. *Id.* On May 30, 2014, the District Court of Howard County, Maryland, found Hardy incompetent to stand trial and ordered that he be immediately returned to the custody of CTPHC. ECF No. 16-15 at 2. As a result, Hardy's hospital commitment status was updated to "Incompetent to Stand Trial" ("ITS"). ECF No. 16-16 at 2.

On May 28, 2015, pursuant to court order, Hardy was subjected to a second competency examination by Christopher M. Wilk ("Wilk"), a Forensic Psychiatry Consultant from DHMH. ECF No. 16-17 at 3. This time however, the examiner concluded that Hardy had a "very good

understanding of the nature and object of the proceedings against him" and was "competent to stand trial." *Id.* at 6. On June 19, 2015, Hardy appeared in the District Court for Howard County. ECF 16-18 at 2. After reviewing the DHMH examiner's findings and recommendations regarding Hardy's competency, the court determined that Hardy was competent to stand trial. *Id.* at 3. Hardy received a nolle prosequi for the sex offense charge, but was found guilty of second-degree assault. *Id.* Hardy's hospital commitment status was changed from "ITS" back to "NCR." ECF No. 16-19 at 2.

In June 2014, Hardy was transferred to Ward 2 East, a maximum security ward at CTPHC, and Dr. Sonny Miranda became his treating psychiatrist. *See* ECF No. 16-21. To date, Hardy remains involuntarily committed as a patient at CTPHC. ECF No. 16-25 at 3.

### 2. Reviews for Release

On June 13, 2002, a hearing was held before Administrative Law Judge ("ALJ") Mae Catherine Reeves at CTPHC to determine Hardy's eligibility for release from commitment to DHMH. ECF No. 16-2 at 2. The ALJ found that Hardy would be a danger to himself or the person or property of others if released from confinement. *Id.* Hardy waived his right to a hearing and agreed to be retained at the hospital for further care and treatment. *Id.* The Circuit Court for Baltimore City thereafter ordered Hardy's commitment to DHMH to continue. *Id.*

Approximately two years later, another administrative hearing was held at CTPHC to determine Hardy's eligibility for release from commitment. ECF No. 16-3 at 2. The Circuit Court for Baltimore City ordered Hardy's commitment to DHMH to continue. *Id.*

On July 21, 2005, an administrative hearing was held before ALJ David Hofstetter at CTPHC to again determine Hardy's eligibility for release from commitment. ECF No. 16-4 at 3. The ALJ concluded that Hardy would be a danger to himself or the person or property of others

6

if discharged or conditionally released from the custody and care of DHMH, and recommended that Hardy remain committed at CTPHC for further inpatient care and treatment. *Id.* at 7. The Circuit Court for Baltimore City ordered Hardy's commitment to DHMH to continue. ECF No. 16-5 at 3.

On February 9, 2009, Hardy applied to DHMH for release from commitment, and an administrative hearing was held before ALJ Robert F. Barry at CTPHC on March 12, 2009, to determine his eligibility for release from commitment to DHMH. ECF No. 16-6 at 2. The ALJ concluded that Hardy failed to establish that he would not be dangerous to himself and the persons and property of others if released with or without conditions and recommended that he remain committed to DHMH. *Id.* at 10–11. The Circuit Court for Baltimore City thereafter ordered Hardy's commitment to DHMH to continue. ECF No. 16-7 at 2.

On April 16, 2010, Hardy again petitioned DHMH for release from commitment, and an administrative hearing was convened on June 3, 2010, before an ALJ at CTPHC to determine his eligibility for release from commitment to DHMH. ECF No. 16-8 at 2. After reviewing the ALJ's findings and recommendations, the Circuit Court for Baltimore City found that Hardy required further inpatient treatment as he would be a danger to himself or the person or property of others if he were released with or without conditions, and ordered Hardy's commitment to DHMH to continue. *Id.*

On October 1, 2015, Hardy requested an annual hearing to determine his eligibility for conditional release or discharge and an administrative hearing was held before ALJ Steven V. Adler at CTPHC on December 17, 2015. ECF No. 16-22 at 3. In anticipation of the hearing, CTPHC's Clinical/Forensic Review Board had conducted a review and recommended that Hardy remain committed as a patient at CTPHC as he "remains dangerous for release at this time." ECF

7

No. 16-21 at 25. In addition, CTPHC's Social Work Department conducted its Annual Reassessment of Hardy from December 2014 to December 2015. ECF No. 16-20. Included in the Reassessment Report were statements that Hardy was an indigent status patient who periodically receives funds from family members, and while his medication compliance remained "inconsistent," he "demonstrated a decrease in paranoia . . . and his behavior has improved." *Id.* at 2–3. The ALJ determined that Hardy would be a danger to himself or to the person or property of others if discharged from the Hospital or released with conditions and recommended that Hardy remain confined to CTPHC for inpatient care or treatment. ECF No. 16-22 at 15.

On January 5, 2016, Dr. Miranda issued his Annual Interdisciplinary Reassessment and Treatment Plan Review, concluding, "Mr. Hardy continues to be assessed dangerous to himself, others and/or the property of others due to his mental disorder." ECF No. 16-23 at 18. On January 14, 2016, the CTPHC Clinical/Forensic Review Board issued its findings as to Hardy's Annual Review of Status, finding that while Hardy "continues to experience grandiose delusions, possible auditory hallucinations, loose associations, impulsivity, irritability and impoverished thinking," his "symptoms have improved slightly during the last year." ECF No. 16-24 at 2. On February 16, 2016, the Circuit Court for Baltimore City ordered Hardy's commitment to DHMH to continue. ECF No. 16-25 at 3.

### 3. Diagnoses and Treatment

Hardy's Individualized Treatment Plan ("ITP") dated February 23, 2015, indicates that he was diagnosed with "Schizophrenia Paranoid Type, Exhibitionism, Alcohol and Cannabis Abuse in Sustained Remission in a Controlled Environment, Borderline Intellectual Functioning and Antisocial Personality Disorder." ECF No. 16-17 at 3. He was also diagnosed with various medical conditions that were unrelated to his competency to stand trial. *Id.* On March 24, 2015,

Hardy was noted to be "motivated by the level system" and his "behavioral intervention support plan." *Id.* at 4. It was also noted that he had been adherent to these plans approximately 90% of the time and that his "negative sexual comments have decreased towards the female staff." *Id.*

On April 13, 2015, Hardy's social worker indicated that when attending the discharge issues group discussions, Hardy continued to offer feedback and utilized the process to increase coping skills and improved frustration tolerance. *Id.* On that day, Hardy was also promoted to Platinum Level, the highest privilege level afforded to an individual on the maximum-security side of the hospital, and it was also noted that his behavioral issues had significantly improved with no episodes of violence. *Id.* Mr. Wilk, the DHMH consultant who authored the June 9, 2015 Pretrial Evaluation report, further noted that Hardy "continued to be adherent to his behavioral intervention plan, responsive to redirection from the staff and adherent to the ward rules." *Id.*

On May 8, 2015, Hardy's psychiatrist indicated that although he was "oppositional, guarded, and uncooperative," he continued to be "behaviorally stable." ECF No. 16-17 at 4. He had a "poverty of the contents of thought," "concrete thinking," and "impaired insight into his illness." *Id.* It was also noted that despite blaming his medications for his somatic complaints and wanting to discontinue them, he still continued to take his medications regularly. *Id.* Hardy's current diagnoses still include schizophrenia (paranoia type), exhibitionism, borderline intellectual functioning and antisocial personality disorder. ECF No. 12-3 ¶ 7. The symptoms of his mental illness include auditory hallucinations, grandiose and persecutory delusions, irrational thinking, impaired judgment and extremely poor insight into his mental illness. *Id.*

During his hospitalization at CTPHC, Hardy's delusions have included that his medications were poison, that CTPHC staff members were attempting to keep him hospitalized indefinitely, and that he is the subject of experimentation by staff. *Id.* In order to treat his mental

9

illness, Hardy is prescribed Haloperidol and Quetiapine for his psychosis, Oxcarbazepine, Lithium Carbonate and Divalproex sodium for his mood, Leuprolide for his hypersexuality, Lorazepam and Diphenhydramine concentration for his agitation, and Benztropine for side effects. *Id.* ¶ 8. These medications are the standard of care for the treatment of schizophrenia and although Hardy sometimes refuses medications, he ultimately accepts them. ECF No. 16-21 at 6; *see also* ECF 12-3 ¶ 10. Hardy has repeatedly disputed his mental illness diagnosis and the need for medications. *See* ECF No. 16-23 at 17. His poor insight leads him to believe he does not have a mental illness and does not need to take the medications he is prescribed. ECF No. 12-3 ¶ 11. Nevertheless, Hardy's medication administration records from 2016 show that he was administered all of his prescribed medications on all but one or two days each month. ECF No. 16 at 14; *see* ECF No. 16-26. He also received all of his prescribed medication on the dates he received and responded to court correspondence and filings. *Id.* In addition, there are no "Medication Refusal Notes" for any of those dates or any other documents indicating that Hardy was not on his prescribed medications when he filed the Complaint and several motions with the Court in this case. *Id.* The Clinical Forensic Review Board Case Report, dated November 24, 2015, further states that Hardy will "[a]t times refuse medications when called by the medication nurse, but later on accepts them when reminded that such refusals will only prolong his stay at the facility." ECF No. 16-21 at 6.

4. **Mental Status**

In his pretrial competency evaluation report from May/June 2015, Forensic Psychiatry Consultant Wilk indicated that Hardy was "goal directed and was able to spontaneously elaborate his thoughts clearly and effectively." He also noted that:

> [Hardy] was attentive throughout the interview. His short term
> memory was intact because he could recall information that I had

10

> presented to him earlier in the interview. His long-term memory
> was intact because he was able to recall details about his legal
> history and the names of his treatment providers. His insight was
> fair because although he stated that he had been diagnosed with
> Schizophrenia, and recognized that he had been hospitalized for an
> extended period of time, he grossly underestimated the benefits of
> his psychiatric medications. His judgment was good insofar as he
> cooperated with the interview and the Correctional Officers who
> brought him to the Circuit Court Medical Office.

ECF No. 16-17 at 5. During his competency evaluation, Hardy understood the charges against him and recognized that these charges could prolong his hospitalization at CTPHC. *Id.* He was also able to relate a coherent version of the State's version of the offense, as described in the Application for Statement of Charges, and to relate his version of the offense in a clear and cogent manner. *Id.* Additionally, it was noted that Hardy demonstrated a good understanding of the adversarial nature of the proceedings, was able to identify the roles of several courtroom personnel, and understood that the judge and jury were neutral parties. *Id.* He also demonstrated a working knowledge of potential sentences. *Id.* Hardy acknowledged that he had been deemed NCR in the past, and claimed to have been "in the hospital for 13 years dealing with that." *Id.* Wilk observed that Hardy was able to rationally discuss the risks and benefits of an NCR plea and understood the conditions of a conditional release plan. *Id.* at 6. Hardy's behavior and participation in the interview, according to Wilk, indicated that he could testify relevantly, should he choose to do so. *Id.* Wilk further noted that Hardy did not have delusional thoughts about his attorney, the court, or the victim in his case; and Wilk found him competent to stand trial. *Id.*

      Based on the most recent clinical evaluation, Hardy is generally oriented to time, place and person, answers questions appropriately, exhibits normal mood and affect, and continues to deny hallucinations, although staff have observed him interacting with internal stimuli. ECF No.

16-22 at 5 ¶ 7. He struggles at times to elaborate on his answers upon request, displays a poverty of thought content and loose associative functions, and at times has paranoid delusions. *Id.* His immediate memory is intact, while his recent and remote memory are fair; his abilities to concentrate and perform calculations are fair to poor; his thinking and abstractive ability are concrete; his coping skills are poor; and his insight and judgment, particularly into his mental illness, are somewhat impaired. *Id.* The severity and intensity of the symptoms brought on by his mental illness have been reduced, and he has made limited gains in insight regarding his clinical condition. *Id.* ¶ 8. Hardy's symptomology "chiefly consists of delusional thought process coupled with sexually inappropriate behavior." *Id.* While continuing to experience ongoing symptoms of his mental illness, those symptoms have improved slightly during the last year. ECF No. 16-24 at 2. Hardy has not yet achieved sustained remission of the symptomology occasioned by his disease process, and remains unable to control his impulses and emotions. ECF No. 16-22 at 7 ¶ 17.

### III.  DISCUSSION

#### A.  Legal Standard

Fed. R. Civ. P. 17(c)(2) states:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

With respect to Rule 17(c)(2), the Fourth Circuit has observed that "[t]he practical problem presented by a case in which a presumably competent party might be thought to be acting oddly, or foolishly, or self-destructively in prosecuting or defending a civil lawsuit, with or without counsel, is a real one," adding that "[p]arties to litigation behave in a great variety of

ways that might be thought to suggest some degree of mental instability." *Hudnall v. Sellner*, 800 F. 2d 377, 385 (4th Cir. 1986). By "incompetence," Rule 17(c)(2) contemplates the forms of mental deficiency which affect a person's practical ability to manage his or her own affairs, that goes beyond "something other than mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders." *Id.* The Rule allows this Court to appoint a guardian ad litem, but it does not compel it to do so. Rather, it grants the Court considerable discretion to issue an "appropriate order" to protect the interest of an unrepresented, incompetent litigant. *See Seibels, Bruce & Co. v. Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996).

Having investigated Hardy's mental health history, the guardian ad litem has been asked to assess Hardy's capacity to bring this action. To establish capacity to sue, a claimant must show that he or she is legally competent to pursue the action without a guardian. *See Cook v. Mildred Mitchell-Bateman Hosp.*, 2016 WL 1306648, *2 (S.D. W. Va. 2016). The general test applied by the Fourth Circuit to determine whether a party is "incompetent" to defend without representation in civil litigation under Fed. R. Civ. P. 17(c) is whether he or she possesses a "form of mental deficiency which—whether or not accompanied by other forms of personality disorder—affects the person's practical ability to manage his or her own affairs." *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986) (citing *Beckley National Bank v. Boone*, 115 F.2d 513, 518 (4th Cir. 1940) (the "test is the ability to know the nature, character and effect of one's acts, and to understand the subject matter of business transactions.")).

Under Maryland law, a person is presumed competent to stand trial and adults are presumed to be capable of making their own informed decisions, even after involuntary admission to a psychiatric hospital. *Beall v. Maryland*, No. GJH-15-2180, 2016 WL 4512718, at

*4 (D. Md. Aug. 22, 2016) (citing *Williams v. Wilzack*, 319 Md. 485, 573 A.2d 809, 830 n.8 (1990) ("The fact that an inmate has been involuntarily institutionalized in a psychiatric facility is not tantamount to finding the inmate is mentally incompetent to make treatment decisions.")). However, if a person is deemed incompetent and does not have a duly appointed representative, he or she may sue by next friend or by a guardian ad litem. *See Beall v. Maryland*, 2016 WL 4512718, at *3. A federal district court's power to appoint counsel is "discretionary and may be considered where an indigent claimant presents exceptional circumstances." *Feist v. Howard Cty. Det. Ctr.*, No. CIV.A. WDQ-13-2978, 2014 WL 3672889, at *1 n.3 (D. Md. July 22, 2014). Significantly, where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id.* at *2–3.

### B. Findings of the Guardian Ad Litem

Based on the investigation and the evidence adduced in the pleadings, the Guardian Ad Litem has concluded that Hardy has sufficient capacity to pursue this action without a guardian as he is capable of understanding the nature and object of the instant proceedings and managing his own affairs. ECF No. 16 at 17–22. The Guardian finds that Hardy clearly understands the procedure for filing and maintaining a civil action in federal court. *Id.* at 18. Hardy filed the instant Complaint on his own, as well as the Motion for Leave to Proceed in Forma Pauperis. *Id.* Further, Hardy timely responds to almost every filing prompting a response in this case. *Id.* Hardy's filings have been clearly articulated and generally related to the subject matter of the opposed filing, leading the guardian to conclude that Hardy has at a minimum a rudimentary understanding of the defenses involved and the information provided to him in this case. *Id.*

The Guardian notes, by way of example, that Hardy clearly understands the significance of a guardianship, given his adamant opposition to such appointment, claiming, in essence, that

had he wanted a guardian to assist in the litigation, he would have asked that his parents be appointed. ECF No. 16 at 18–19. Hardy's claims in this matter, namely, that his medications are worsening his mental state and CTPHC staff are conspiring to keep him hospitalized indefinitely, are also consistent, as he has asserted such claims for years, and does not contradict them. *Id.* at 19. As a result, the Guardian concludes that Hardy has demonstrated a good understanding of the instant legal proceedings, and the ability to retain the facts and information presented in this case and relate a coherent version of his claims and arguments. *Id.* Second, according to Hardy's CTPHC records and reports by his treating psychiatrists, Hardy is in charge of his own medical decisions and is fully and legally capable of making decisions about his health care and treatment. *Id.* The Guardian notes that Hardy has his own advance directive and living will, as well as a directive indicating his choice of whether to notify his parents in the event he is restrained. *Id.* Hardy also has the ability to decide whether to take or refuse new medications and annual flu vaccines; has control over the release of his medical records; and has signed a Patient's Understanding of Potential Consequences of Violent Behavior, attesting to his awareness of same. *Id.*

The Guardian further notes that Hardy is afforded a significant amount of discretion with regard to making important decisions about his health care, medical treatment and personal affairs, including decisions that may result in adverse consequences, and concludes that his refusal to pay the Court's mandatory partial filing fee in this case is no different. ECF No. 16 at 19. She points out that as an initial matter, Hardy demonstrated his knowledge and understanding of the mandatory filing fee requirement by filing the Motion for Leave to Proceed in Forma Pauperis. *Id.* He would not have asked the Court to waive the filing fee if he was unaware that the fee even existed. *Id.* In addition, Hardy not only received multiple written explanations and

instructions from the court concerning his obligation to pay the fee, but he also was advised in person by LCSW-C Michael Jordan about the fee requirement and how his failure to make any payments towards the fee would result in dismissal of his complaint. *Id.* Even with the full knowledge that his failure to make payments on the filing fee would likely result in the dismissal of his Complaint, Hardy has refused to provide any portion of the filing fee. *Id.* Significantly, Hardy even signed an affidavit attesting to his knowledge of the filing fee requirement and understanding that failure to pay the fee would result in the likely dismissal of his case. *Id.* Hardy has demonstrated that he is capable of managing his own affairs and making important legal decisions, which may result in adverse outcomes. *Id.* Likewise, the guardian believes that Hardy understands the basic requirements for filing a law suit, including the Court's mandatory filing fee, and the consequences that will likely result from failing to pay it, and he is therefore willingly and knowingly refusing to pay. *Id.*

Although Hardy has continuously demonstrated poor insight into his mental illness, his CTPHC records do not suggest that he lacks significant understanding with regard to civil procedure, legal proceedings and managing his personal affairs, including his finances. ECF No. 16 at 20. In fact, recent assessments indicate that Hardy is generally oriented to time, place and person; he answers questions appropriately; his immediate memory is intact; his thinking and abstractive ability are concrete; he is goal directed and able to spontaneously elaborate his thoughts clearly and effectively; his general insight is fair; and his judgment and cooperation with regard to his participation in legal proceedings is good. *Id.* Mr. Hardy is also currently enrolled in a full-time GED program at CTPHC. ECF No. 16-28 at 2. As of October 13, 2016, he had completed 12 out of the 16 required sessions toward the completion of his degree. *Id.* The GED report indicates that Hardy "will be able to demonstrate an understanding of general

concepts including knowledge of basic cell structure, organisms and other general biology topics," as well as in "basic chemistry, including atom and molecule structures, a general understanding of physics, astronomy, and geological concepts involving soil and plate tectonics." *Id.* Additionally, Hardy's GED instructor notes that he "participates appropriately in group discussions," "will ask questions to gain clarification when necessary" and is "[m]aking satisfactory progress" toward his degree. *Id.*

Although found incompetent to stand trial by the state circuit court in 2014, the same court determined a year later in 2015 that Hardy had attained sufficient competency to stand trial. As stated above, the 2015 competency report concluded that Hardy has a "very good understanding of the nature and object of the proceedings against him" and "is competent to stand trial." ECF No. 16-17 at 6. Examination of Hardy's criminal and legal records does not suggest that he has been found incompetent since the court deemed him competent in 2015 and his most recent medical and psychiatric records are consistent with the facts cited in the report on which the 2015 competency determination was based. Since Hardy's mental status has remained largely unchanged since that time, the Court finds no reason to depart from the general findings as to Hardy's mental capacity, especially in the context of a civil lawsuit.

Notwithstanding his mental illness, Hardy has adequately and plausibly articulated his claims in this case, and he has further demonstrated deliberate decision-making through his ability to communicate choice, and understand and appreciate the significance of information he is given. Particularly, given his ability to make important decisions relating to his personal affairs and comprehend the nature and object of the instant proceedings, the Court does not find that Hardy's mental illness is affecting his competence insofar as he is able to understand the litigation procedure. Hardy shall not be precluded from continuing in the litigation without a

guardian or other representative, especially since there is no requirement that a guardian be appointed to pursue the claims presented under Rule 17(c)(2). *See Feist*, 2014 WL 3672889 at *6 n.5. While there is no dispute that Plaintiff suffers mental illness, he is not legally adjudicated "incompetent." Hardy has demonstrated that he has a good understanding of the nature and object of the proceedings against him, is able to relate a coherent narrative of his claims, and timely respond to all court filings. He is consciously refusing to pay the filing fee, knowing full well the consequences of failing to do so. Hardy has thus shown that he is sufficiently competent to state a federal claim and that he has the wherewithal to articulate the legal and factual basis of his claims himself. *See Feist*, 2014 WL 3672889 at *3. In addition, the issues pending before the court are not unduly complicated, and a hearing is not required. *Id.* Therefore, there are no exceptional circumstances at this time that would warrant the appointment of an attorney to represent Hardy in this action.

## V. CONCLUSION

Hardy has previously been warned that his refusal to authorize payment of an initial filing fee would result in dismissal of his lawsuit without prejudice. ECF No. 3 ¶ 2. Defendants have moved to dismiss the lawsuit. ECF No. 7. Hardy is competent to act and has been advised of the consequences of failing to pay. Therefore, Defendants' Motion to Dismiss, ECF No. 7, shall be granted. A separate Order will follow.[2]

Date: May 30, 2017

/s/ GEORGE J. HAZEL
United States District Judge

---

[2] Defendants' second dispositive motion, ECF No. 12, shall be denied as moot.